## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SUSAN PEREZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.:** |
| | § | **3:14-CV-01342-K** |
| **FEDERAL EXPRESS CORPORATION** | § | |
| **a/k/a FEDEX EXPRESS,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment, filed on May 8, 2015. The Court has considered the motions, briefs, and evidence the parties submitted, and the applicable law. For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### I.   Factual and Procedural Background

Susan Perez began working for the Federal Express Corporation ("FedEx") in the Dallas, Texas area in 1985. She held two positions before she ultimately became a Service Assurance Agent at a FedEx station in Irving, Texas in 1996. On October 8, 2012, Perez checked herself into a mental hospital and took a 90-day medical leave of absence from her job. Shortly after Perez took this leave of absence, Christine Reynolds, an advisor in FedEx's Human Capital Management Program, sent Perez a copy of FedEx's medical leave of absence policy.

1

FedEx's leave policy keeps an employee's position available to that employee for 90 calendar days or until the employee exhausts any leave available through the Family and Medical Leave Act, whichever is longer. At the end of the applicable leave period, FedEx can replace the employee or allow the position to remain unfilled. If the employee's position is no longer available after an employee's *medical* leave of absence that exceeds 90 days, FedEx will provide an employee with a 90-day *personal* leave of absence during which the employee may apply for open jobs at FedEx. If an employee does not secure a position with the company before the end of the 90-day personal leave period, FedEx terminates the employee.

On December 5, 2012, while still on leave, Perez filed a joint charge of discrimination against FedEx with the United States Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC"). In this charge, Perez alleged that she was sexually harassed by two FedEx managers.

On January 14, 2013, Christine Reynolds notified Perez and Perez's managers at FedEx that because Perez had been on a medical leave of absence in excess of 90 days, her managers could replace her or eliminate her position if it was necessary to maintain operational efficiency. Near the end of January, FedEx's management decided to eliminate Perez's job along with others as part of the company's ongoing plans to merge two Dallas, Texas area stations. At the end of January, Perez asked FedEx to extend her job protection until she returned from medical leave. Reynolds informed Perez that FedEx could not consider the request without an anticipated

return-to-work date from Perez's physician. Perez's physician notified Reynolds that he would release her to return to work with no restrictions on February 19, 2013.

On February 19, 2013, before FedEx could consider Perez's request to extend her job protection, Perez went to her work station in Irving. When she arrived, FedEx Senior Manager Chris Yates told Perez to contact Reynolds because Perez's position had been eliminated. In response, Reynolds sent Perez another copy of FedEx's Medical Leave of Absence Policy and gave her a 90-day personal of absence leave to find another job at FedEx.

For the next 90 days, Reynolds sent Perez copies of the companywide job postings at FedEx. Over an additional 130 days that FedEx allowed Perez to remain on personal leave, Perez unsuccessfully applied for one position: a promotion to an open Operations Manager position at FedEx's hub facility at the Alliance-Fort Worth Airport. She chose not to apply for 163 lateral or lower-level, non-management positions that were open in the Dallas area. When Perez failed to secure a job with FedEx despite the extension of her personal leave, FedEx terminated her employment in early July 2013.

## II.    Perez's Allegations

Perez alleges that FedEx, through two of its managers, subjected her to a sexually abusive work environment and retaliated against her in violation of the Texas Commission on Human Rights Act ("TCHRA"). Specifically, she claims that Ervin Davis, a FedEx Station Operations Manager, and Stanley Wilson, a FedEx Operations

Manager, sexually harassed her on multiple occasions between 2008 and 2012. Davis and Wilson deny that any of the alleged conduct occurred.

Perez contends that Davis verbally harassed her when he commented on the length of her shorts, made inappropriate and sexually suggestive jokes, and made offensive comments about women. She also alleges that that Davis told Perez that he would "put his big black d--- all up inside of her." Perez also claims that Davis physically harassed her. She contends that sometime in 2010, Davis put his chest in her face in an aggressive manner when he talked to her. She claims that she observed Davis "humping" a pole in the middle of the warehouse and that sometime during the summer of 2012 Davis tried to put his arm around Perez's waist.  Finally, Perez alleges that in the summer of 2012, Davis tried to show Perez a sexually explicit video on his cell phone in his office.

Similarly, Perez contends that Wilson verbally and physically harassed her. She claims that when he passed by Perez, Wilson would sometimes look at her and whistle or make lewd remarks such as, "look at that fine a--" and "I want some of that." According to Perez, Wilson once put his hand on Perez's waist while they were talking, once tried hug her, and slapped Perez on the behind on another occasion. Finally, Perez claims that Wilson cornered Perez in his office and would not let her out.

While she worked for FedEx, Perez was aware of FedEx's internal process which allowed employees to report employment discrimination or harassment claims

4

and allowed the company to investigate and address those claims. In addition, Perez received copies of and training in FedEx's Anti-Harassment Policy, Internal Equal Employment Opportunity Complaint Procedure, and Code of Business Conduct and Ethics.

While she worked for FedEx, Perez submitted one written complaint to FedEx about Davis's comments about the length of her shorts in 2008. She first told FedEx managers at her work station about by Davis and Wilson's other conduct in the summer of 2012. Perez did not tell her manager at the Dallas Metro District Office, tell anyone in FedEx Human Resources, or submit a formal, written complaint to anyone at FedEx about Davis and Wilson's other conduct.

In March 13, 2014, Perez sued FedEx in the District Court for the 298th Judicial District of Dallas County, Texas, alleging that FedEx subjected her to a sexually abusive work environment and retaliated against her in violation of the TCHRA. Perez seeks remedies under the Texas Labor Code, including back pay, front pay, lost benefits, costs, attorney's fees, and punitive damages on this claim. On April 14, 2014, FedEx removed the action to this Court on the basis of diversity jurisdiction. On May 8, 2015, FedEx filed a motion for Summary Judgment.

## III.    Summary Judgment

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The moving party bears the initial burden of showing by reference to materials on file that there is no genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The nonmovant must then go "beyond the pleadings" and introduce competent evidence like affidavits, depositions, admissions, to establish "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The Court must view all evidence and reasonable inferences in the light most favorable to the nonmovant and determine whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *United States v. Die bold, Inc.*, 369 U.S. 654,655 (1962); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## IV.    Sexual Harassment Claim

FedEx argues that summary judgment is appropriate on Perez's sexual harassment claim for two reasons. First, because Perez cannot establish a *prima facie* case for sexual harassment. Second, because even if Perez could establish a *prima facie* case for sexual harassment, FedEx meets both prongs of the *Faragher* affirmative defense and is entitled to judgment on Perez's sexual harassment claim as a matter of law. The Court agrees that Perez cannot establish a *prima facie* case for sexual harassment so the Court does not address FedEx's *Faragher* argument.

Perez asserts a hostile-work-environment theory of gender discrimination through sexual harassment under the TCHRA. *See* TEX. LAB. CODE § 21.051. Because the

TCHRA is modeled on and "is substantively identical to its federal equivalent in Title VII," the courts look to federal case law under Title VII when construing its Texas counterpart. *Texas Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 349 n. 7 (Tex. App. – Austin 2007); *see also* 42 U.S.C. § 2000e-2(a)(1); *See Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445-46 (Tex. 2004). To prevail on a sexual harassment theory under the TCHRA, Perez must show: (1) she is a member of a protected class; (2) she is the victim of uninvited sexual harassment; (3) that this harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of her employment. *See Harvill v. Westward Comm'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005).

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id., quoting Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). This "abusiveness" standard requires "extreme" conduct. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris*, 510 U.S. at 21. The Court is examines the conduct objectively, from a reasonable person's perspective, and subjectively, from the victim's perspective. *Harris*, 510 U.S. at 21-22. Additionally, the Court considers the totality of the circumstances, including the frequency and severity of the discriminatory conduct; whether the conduct was physically threatening or humiliating, or a mere

offensive utterance; and whether the conduct unreasonably interfered with the employee's work performance. *Faragher*, 524 U.S. at 787-88; *Harris*, 510 U.S. at 23.

FedEx argues that although Davis's and Wilson's alleged behavior may have been highly inappropriate, their actions fall short of conduct severe enough to alter the terms of Perez's working conditions. Perez disagrees, arguing that Davis's and Wilson's alleged conduct was both severe and pervasive.

The Court agrees with FedEx. Davis's and Wilson's conduct was not severe enough to alter the terms of Perez's working conditions. Sexual harassment must be sufficiently severe to be actionable. *Meritor*, 477 U.S. at 67. In *Hockman*, the plaintiff complained that her immediate supervisor commented on her body and her behind, made comments to her about the bodies of other employees, slapped her behind with a newspaper, brushed up against her breasts and behind, attempted to kiss her, asked her to come in early so they could be alone together, and once stood in the doorway of the ladies' room to watch plaintiff wash her hands. *Hockman v. Westward Communications*, 407 F.3d 317, 321-33 (5th Cir. 2004). The Fifth Circuit rejected the plaintiff's hostile work environment claim and concluded the harassing behavior was not so severe or pervasive to alter a term, condition or privilege of her employment. *Id.*

Similarly, in *Shepherd*, the Fifth Circuit found that a co-worker's conduct was not sufficiently severe to constitute affect a term, condition or privilege of the victim's employment. In that case, the plaintiff alleged that her co-worker touched her arm

8

several times, rubbed her arm down to her wrist, remarked "you have big thighs" while he simulated looking under her dress, stood over her on several occasions and attempted to look down her clothing, remarking "your elbows are the same color as your nipples," and patted his lap and remarked, "here's your seat." *Shepherd v. Comptroller of Pub. Accounts of the State of Texas,* 168 F.3d 871, 874-75 (5th Cir. 1999).

In *Harvill,* the Fifth Circuit took issue with both *Hockman* and *Shepherd*. *Harvill,* 433 F.3d at 434–35. The Fifth Circuit observed that these cases applied the wrong legal standard when both required the conduct to be "severe *and* pervasive," even as the Supreme Court has made clear that the standard is "severe *or* pervasive." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 403 (5th Cir. 2013). However, whether *Hockman* and *Shepherd* applied the wrong standard for *severe conduct* – the standard the Court applies here – has not been called into question.

Perez alleges that Davis and Wilson engaged conduct similar to the conduct alleged by the plaintiffs in *Hockman* and *Shepherd*. She claims that Davis tried to put his arm around Perez's waist, that Davis told Perez that he would "put his big black d--- all up inside of her," and that Wilson remarked "look at that fine a--" and "I want some of that," put his hand on Perez's waist while they were talking, once tried hug her, and slapped Perez on the behind on another occasion.

Summary judgment evidence also shows that Perez was not physically threatened by Davis's and Wilson's conduct and the conduct did not prevent Perez from performing her job duties. Perez testified at her deposition that when Davis and

Wilson touched her or made sexual comments to her, she "brushed it off," believing that "boys will be boys," that Davis and Wilson were "just being guys," and "just being silly." The evidence shows that Perez was neither threatened nor humiliated by Davis' and Wilson's alleged conduct and there is no evidence that shows that the alleged harassment actually prevented Perez from performing her job duties. The conduct was not sufficiently severe to constitute affect a term, condition or privilege of Perez's employment.

Perez also argues that Davis's and Wilson's conduct was sufficiently severe because it caused her to check herself into a mental hospital. Perez supports her argument by pointing to her own deposition testimony. A nonmovant's summary judgment burden is not satisfied by "unsubstantiated assertions." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994). Without additional evidence to substantiate her deposition testimony, Perez fails to show that there is a genuine issue for trial. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

Davis's and Wilson's alleged comments and actions are not sufficiently severe to alter the conditions of Perez's employment and create an abusive working environment. Consequently, Perez cannot establish a *prima facie* case for hostile work environment and FedEx is entitled to summary judgment on this claim.

## V.        Retaliation Claim.

Perez also asserts a retaliation claim under the TCHRA. Specifically, Perez alleges that FedEx displaced her from her position and subsequently terminated her employment because she filed an EEOC charge against the company. To prevail on a retaliation claim, Perez must show: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *See Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 314 S.W.3d 548, 558 (Tex. App. – Corpus Christi 2010).

FedEx does not dispute that Perez's EEOC charge qualifies as protected activity under Title VII or the TCHRA. FedEx also acknowledges that Perez's displacement from her former position and the termination of Perez's employment both qualify as adverse employment actions. FedEx does argue, however, that Perez cannot establish a *prima facie* case of retaliation because she cannot show causal links between these employment actions and her EEOC charge.

In response, Perez argues that her position was not in fact eliminated and that the timing of her termination was suspicious. "The combination of suspicious timing *with other significant evidence of pretext* can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)(emphasis added). Perez presents no other significant evidence of pretext and no evidence to support her claim that her position was not actually eliminated. Instead, the summary

judgment evidence shows that Perez's job displacement occurred because FedEx eliminated Perez's Service Assurance Agent position as part of the company's ongoing plans to merge two Dallas, Texas area stations. Perez's employment was terminated in accordance with company policy when she failed to secure another position with FedEx, even after FedEx notified her of 163 lateral or lower-level, non-management positions that were open in the Dallas area.

Perez's only remaining argument to support a causal link between her EEOC charge and her displacement is that the timing of her displacement was suspicious. When temporal proximity is the only evidence of causation, "the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). "What is considered 'very close' varies," but it is clear that two months is too long to establish a causal connection when a plaintiff relies on timing alone. *Amsel v. Texas Water Dev. Bd.*, 464 F. App'x 395, 402 (5th Cir. 2012). A five month lapse is also too long without other evidence of retaliation. *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Perez argues that FedEx displaced her from her former Service Assurance Agent position and terminated her employment "about a month" after she filed her EEOC charge against FedEx. The record shows, however, that Perez's position was eliminated in late January 2013. This was almost two months after Perez filed her EEOC charge. Perez's employment was not terminated until July 2013, seven months after she filed her EEOC charge.

Like the time periods in *Amsel* and *Evans,* both the two month period and the seven month period between Perez's protected activity and FedEx's adverse actions are too long to establish a causal connection. *Amsel*, 464 F. App'x 395, at 402; *Evans*, 246 F.3d 344, at 354. Without other evidence of retaliation, Perez cannot establish the required causal link between her EEOC charge and FedEx's adverse employment actions. *Clark County*, 532 U.S. 268, at 273-74.

Consequently, Perez cannot establish a retaliation claim under the TCHRA. FedEx is entitled to summary judgment on this claim.

**SO ORDERED.**

Signed October 7th, 2015.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE